# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

| | | |
|---|---|---|
| **JOSHUA BRYANT,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **NO. 3:15-CV-475** |
| **DUSTIN McCOIG, HOMER BULLMAN,** | ) | **REEVES/POPLIN** |
| **JASON WILLS, and AMBER STOCKS, in** | ) | |
| **their individual capacities, and** | ) | |
| **ANDERSON COUNTY, TENNESSEE,** | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

In October 2014, Joshua Bryant was allegedly assaulted by several corrections officers while he was detained in Anderson County Jail. In October 2015, Bryant filed this civil-rights suit against Anderson County, Tennessee, and four corrections officers, Dustin McCoig, Homer Bullman, Jason Wills, and Amber Stocks.[1] All defendants except Dustin McCoig filed a joint motion for summary judgment on December 22, 2017 [D. 31]. After receiving numerous extensions to the response deadline, Bryant filed his response [D. 55] to the joint motion on July 31, 2018. The movants replied [D. 56] on August 8, 2018, and this motion is now ripe for adjudication. For the reasons that follow, the joint motion for summary judgment [D.31] will be **GRANTED in part** and **DENIED in part**.

---

[1] Bryant also filed suit against the Anderson County Sheriff's Department and Sheriff Paul White in his official capacity, but these defendants were dismissed on March 3, 2016 [D. 14].

# TABLE OF CONTENTS

I.    BACKGROUND ................................................................................ 3

  A. Facts ........................................................................................ 3

  B. Procedural History ................................................................. 5

II.   LEGAL STANDARD ....................................................................... 5

III.   DISCUSSION ................................................................................. 7

  A. Waiver of the Right to Sue under § 1983 ............................... 7

  B. § 1983 Claims against Individual Defendants ...................... 9

    1. *Excessive-Force Claim Against Deputy Wills* ................... 11

    2. *Failure-to-Protect Claim against Deputies Wills, Bullman, and Stocks* ..................... 13

  C. § 1983 *Monell* Claim against Anderson County ................. 16

  D. State-Law Claims ................................................................. 17

    1. *Assault and Battery* ....................................................... 17

    2. *Intentional Infliction of Emotional Distress* ................ 20

IV.   CONCLUSION .............................................................................. 21

# I.  BACKGROUND

## A.  Facts[2]

On October 22, 2014, Joshua Bryant was incarcerated in the Anderson County Jail, where he was being held as a state prisoner with the Tennessee Department of Correction. While playing cards with another inmate, Bryant got into a verbal confrontation with Corrections Officer Dustin McCoig, who, at that time, was a corporal employed by the Anderson County Sheriff's Department. McCoig ordered Bryant to return to his cell and then followed him there, where he allegedly choked Bryant and slammed him to the floor. At some point, McCoig called for additional officers. Deputies Jason Wills and Homer Bullman testified that they ran to Bryant's cell when they heard McCoig yell "stop resisting."

What happened next is disputed and only partly fleshed out in the record. According to Bryant, by the time the two deputies arrived, he was handcuffed and McCoig was on top of him, beating his head against the floor. Wills then joined in the assault by kneeing him in the back twice. For their part, Wills and Bullman both say that they arrived prior to the handcuffing, which Bryant was actively resisting, and they immediately stepped in to help. Wills admits to using some physical force on Bryant, but not with his knee; Wills says that he applied a mandibular angle pressure point below Bryant's ear in an attempt to restrain him, and, when that didn't work, he delivered three elbow strikes to Bryant's left shoulder blade. Because these material facts are in dispute, the Court must adopt Bryant's version of events for purposes of ruling on the joint motion for summary judgment.

---

[2] Except as otherwise noted, the factual summary is based on Bryant's Complaint and the parties' statements of fact. The material facts that are disputed and supported by deposition testimony, declaration, or other evidence are construed and stated in the light most favorable to Bryant.

Next, McCoig ordered Bryant to stand and walk out of the cell, but Bryant responded that he was unable to do so because of his injuries. McCoig then instructed Wills and Bullman to lift Bryant off the floor. While the deputies held Bryant up, McCoig grabbed him by the throat a few more times. Wills and Bullman then carried Bryant out of his cell and down some stairs, where they briefly laid him in the hallway. Deputy Amber Stocks was present for at least some of this, but she simply observed and did not touch Bryant at any point.[3] Video footage from the jail camera system shows the group of officers with Bryant in the hallway.[4] The video recording clearly shows an officer strike Bryant across the face two times in a five-second period. This officer has been identified as McCoig.

Shortly after the incident, Bryant filed an inmate grievance form pursuant to the jail's internal grievance procedures, which includes a three-step process with the right to appeal. At the third step, Lieutenant Richard Parker informed Bryant in writing that an investigation into the incident was underway and that he would be made aware of its results; that his inmate classification would not change; and that any disciplinary action against him would be postponed during the pendency of the investigation. (Bryant pled guilty to one charge of "refusing lawful orders," but other disciplinary charges for resisting, engaging in disruptive activities, and interfering with staff member duties were still pending [*see* D. 33-4, at 2].) Bryant signed the grievance form that same day and the matter was resolved without appeal. A couple weeks later, on November 13, 2014,

---

[3] Based on the record, it appears that at least two other officers responded to McCoig's call for assistance, but the extent of their involvement is unclear and they are not parties to this suit. (Although, confusingly, Bryant's response to the motion for summary judgment refers to "Defendant Jeffrey Wayne Watson," who is not and has never been a named defendant in this case [D. 55, at 8].)

[4] Both parties submitted a copy of this video recording into the record [D. 55-10, Ex. J (manual filing); D. 56-1, Ex. A (manual filing)]. The video is two and a half minutes long, without sound. "[A] court may properly consider videotape evidence at the summary judgment stage." *Griffin v. Hardick*, 604 F.3d 949, 954 (6th Cir. 2010).

Bryant was informed that the investigation had concluded and that McCoig's employment with the Anderson County Sheriff's Department had been terminated [D. 33-5; *see also* D. 33-4].

## B. Procedural History

On October 21, 2015, Bryant filed this lawsuit against officers McCoig, Bullman, Wills, and Stocks, and Anderson County, Tennessee [D. 1]. He claims that the individual defendants violated his right to be free from excessive use of force and exhibited deliberate indifference to his physical safety (Count 1). He also contends that Anderson County failed to implement appropriate policies and training that would have prevented the violation of his rights (Count 3). Bryant's federal claims have been brought under 42 U.S.C. § 1983. He has also asserted state-law claims for assault and battery (Counts 2 and 5) and intentional infliction of emotional distress (Count 7), as well as an attendant claim for punitive damages.[5]

Wills, Bullman, Stocks, and Anderson County have filed a joint motion for summary judgment [D. 31], which is now before the Court. Notably, McCoig has not filed a notice of appearance, an answer, or any other motions or responses in this case, and he is not a movant in the present motion for summary judgment.[6] Nevertheless, for ease of reference throughout this opinion, the Court will refer to the four movants in the collective simply as "Defendants."

## II. LEGAL STANDARD

Summary judgment is proper only if the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

---

[5] Bryant's complaint also includes claims for inadequate training or supervision (Count 4) and negligence (Count 6) against the Anderson County Sheriff's Department. Because the Sheriff's Department is no longer a defendant in this action, Counts 4 and 6 are hereby **DISMISSED** as a matter of course. Even if Bryant intended to plead these against the Anderson County instead, the County would be immune from suit as to Count 6 for the reasons stated in Section III.D.1 of this memorandum opinion, and Count 4 would be dismissed as duplicative of Count 3.

[6] McCoig was served with process at his home on November 16, 2015 [D. 39]. On March 8, 2018, the Court ordered McCoig to show cause by April 6 as to why he has not appeared in this case, but he did not do so [D. 47].

56(a). A dispute is genuine if a reasonable jury could find in favor of the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*; *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 847 (6th Cir. 2016).

The moving party bears the initial burden of showing that there is no genuine issue of material fact on any element of the other party's claim or defense. *Stiles*, 819 F.3d at 847. In determining whether this burden is satisfied, the Court must consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in the light most favorable to the nonmoving party and drawing all justifiable inferences in that party's favor. *Adams v. Metiva*, 31 F.3d 375, 378-79 (6th Cir. 1994) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant has satisfied its initial burden, the other party must show that a genuine issue of material fact still exists. *Stiles*, 819 F.3d at 847. In doing so, the non-moving party may not rely on the pleadings alone, but must instead point to "specific facts" in the record that create a genuine issue for trial. *Metiva*, 31 F.3d at 378-89.

In ruling on a motion for summary judgment, the Court need not scour the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). But the Court does not weigh evidence, judge witnesses' credibility, or decide the truth of the matter, and any genuine disputes of fact that do exist must be resolved in favor of the nonmovant. *Anderson*, 477 U.S. at 249; *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014). Ultimately, "[t]he critical inquiry for a district court is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)).

## III. DISCUSSION

In their joint motion for summary judgment, Defendants level four primary arguments against Bryant's federal claims: (1) Bryant waived the right to sue under § 1983 as part of the internal grievance process that he initiated at the jail; (2) Wills is protected by qualified immunity because the undisputed material facts demonstrate that he did not violate any of Bryant's constitutional rights; (3) Bullman and Stocks are entitled to qualified immunity because there are no facts to suggest that either officer had sufficient personal involvement in the incident to sustain a claim under § 1983; and (4) Bryant's claim against Anderson County fails because Bryant cannot show that a policy or custom of the County, including a failure to train its officers, was the moving force behind the alleged violation of his rights. With respect to Bryant's state-law claims, Defendants contend that Bryant cannot satisfy the elements of the claims against the individual officers, and that Anderson County is entitled to immunity. The Court will address each argument in turn.

### A. Waiver of the Right to Sue under § 1983

Defendants contend that Bryant waived the right to file a § 1983 lawsuit because he voluntarily participated in the prison's internal grievance process. Specifically, Defendants say that Bryant "released" them from liability because the grievance procedure was voluntary; Bryant completed the grievance form; he carried the process forward through step three; Lieutenant Parker "obviously looked into the matter seriously"; and a resolution was "satisfactorily agreed upon." [D. 32, at 13-14]. Based on these circumstances, Defendants ask the Court to "enforce" the "agreement" and dismiss them from the case [*Id.* at 14].

It is true, as Defendants point out, that a plaintiff may waive the right to sue under § 1983 in certain circumstances. *See, e.g.*, *Town of Newton v. Rumery*, 480 U.S. 386, 392-97 (1987) (holding that, in certain cases, a court may enforce an agreement in which a criminal defendant expressly

releases her right to file a § 1983 action in return for a prosecutor's dismissal of pending criminal charges); *MacBoyle v. City of Parma*, 383 F.3d 456, 459 (6th Cir. 2004) (affirming the validity of a written release-dismissal agreement in which a plaintiff voluntarily waived all rights to sue in exchange for dismissal of criminal charges). But nothing in the above cases cited by Defendants or the case law more generally even remotely suggests that the right to file a civil-rights lawsuit may be waived *implicitly*. *See* 480 U.S. at 391 (noting that the waiver decision must be "voluntary, deliberate and informed"). Both *Rumery* and *Parma* involved express written release-dismissal agreements (and very different circumstances than are present here). In this case, neither the jail's internal inmate grievance policy nor the grievance form that Bryant signed says anything whatsoever about waiving the right to initiate a civil-rights action [D. 33-1, at 72-74; D. 33-5]. Thus, there is nothing for this Court to "enforce," even if it wished to do so.

Further, construing a plaintiff's voluntary participation in an internal grievance process as an implicit waiver of the right to sue under § 1983 would have deeply troubling implications for the future of prisoners' rights litigation. The Prison Litigation Reform Act requires that prisoners exhaust all available administrative remedies prior to filing a § 1983 action. 42 U.S.C. § 1997e(a). "A prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). And it applies even in cases where the relief sought (*i.e.*, monetary damages) cannot be granted by the administrative process. *Booth v. Churner*, 532 U.S. 731, 734 (2001). Clearly then, participation in

a prison or jail's internal grievance process is a *prerequisite* for bringing a federal civil-rights suit, *not* a substitute for it—and certainly not an implicit waiver.

By initiating and complying with the Anderson County Jail's internal grievance procedures, Bryant properly exhausted the administrative remedies available to him. At the conclusion of this process, *but no earlier*, Bryant obtained the ability to sue for damages. And he elected to do so. The fact that Bryant was purportedly satisfied with the outcome of the grievance process (in which he sought to talk to the chief jailer and urged prosecution of McCoig) does not mean that his civil rights were vindicated through that process, or that he knowingly waived his right to bring a § 1983 lawsuit (in which he now seeks monetary damages). Defendants' argument to the contrary is wholly without merit.

### B. § 1983 Claims against Individual Defendants

Bryant's complaint labels Count One as an excessive use-of-force claim against each individual defendant. But based on the substance of Bryant's allegations, the Court finds that Count One is better construed as an excessive-force claim against McCoig and Wills, and a failure-to-protect claim against Wills, Bullman, and Stocks. *Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 795 (6th Cir. 2003) (noting that the label that a plaintiff applies to a pleading does not determine the nature of the cause of action); *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001) (stating that "the [Federal] Rules [of Civil Procedure] require that we not rely solely on labels in a complaint, but that we probe deeper and examine the substance of the complaint"). It will be analyzed accordingly.

Section 1983 provides a federal cause of action against state officials for the deprivation of constitutional rights under color of state law. But only certain defendants can be held liable for

damages in a § 1983 suit. Under the doctrine of qualified immunity, "government officials per-forming discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a rea-sonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The plaintiff bears the ultimate burden of proving that a defendant is *not* entitled to immunity. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000).

In determining whether a particular defendant is qualifiedly immune from civil liability, the Court must decide (1) whether the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the defendant's alleged misconduct. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court may address these prongs in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

It is important to reiterate that McCoig is not a party to the joint motion that is presently before the Court, and neither his actions nor the defendants' collective actions can be imputed to each individual movant. *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012). Therefore, in assessing the various claims for qualified immunity, the Court must separately analyze whether Bryant has stated a plausible constitutional violation by *each* movant defendant, based on the de-fendant's personal participation in the alleged unconstitutional conduct. *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011).[7] The Court turns to this task now, beginning with Bryant's excessive-force claim against Wills.

---

[7] Supervisory liability under § 1983 is inapplicable in this case because all of the moving defendants were deputies, and, as such, they were all subordinate to Corporal McCoig [*see* D. 55-2, at 4]. Based on the deposition testimony, it appears that McCoig was the supervisor in charge at the time of the incident [D. 55-2, at 4-5; D. 55-6, at 3-4].

### 1. *Excessive-Force Claim Against Deputy Wills*

For this claim, the second prong of the qualified immunity test is not contested. A prisoner's right to be free from the use of excessive force at the hands of a corrections officer is a clearly established right under the Eighth and Fourteenth Amendments.[8] *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Cordell v. McKinney*, 759 F.3d 573, 588 (6th Cir. 2014). But "not every shove or restraint gives rise to a constitutional violation," and the parties dispute whether Wills violated Bryant's rights. *Cordell*, 759 F.3d at 580; *Hudson*, 503 U.S. at 9 (noting that "not ... every malevolent touch by a prison guard gives rise to a federal cause of action").

To sustain a claim for excessive use of force under the Eighth Amendment, a prisoner must satisfy both a subjective and an objective component. *See, e.g.*, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Specifically, the prisoner must show that (1) the prison official defendant acted "maliciously and sadistically to cause harm" (the subjective component), and (2) the pain inflicted was "sufficiently serious" to offend "contemporary standards of decency" (the objective component). *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Proof of malicious conduct automatically establishes the objective component, so long as the plaintiff has alleged more than a *de minimus* use of physical force. *Id.* at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... [w]hether or not significant injury is evident."); *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993) ("No actual injury needs to be proven to state a viable Eighth Amendment claim.").

---

[8] Bryant's complaint raises claims under the Fourth, Fifth, Eighth, and Fourteenth Amendments. "Which amendment applies depends on the status of the plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between." *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002). Because Bryant was a convicted state prisoner at the time of Defendants' alleged misconduct, the Eighth Amendment applies in this case. *See Robinson v. California*, 370 U.S. 660, 667 (1962) (holding that the Eighth Amendment prohibition against cruel and unusual punishments applies to the states through the Fourteenth Amendment).

For the subjective component, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 7. Courts may consider "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). The Sixth Circuit has cautioned that a prison official's decision to use force is entitled to wide-ranging deference because "prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance." *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002)). Thus, the ultimate issue is "not whether the use of force was absolutely necessary in hindsight, but 'whether the use of force could plausibly have been thought necessary.'" *Griffin*, 604 F.3d at 954 (quoting *Whitley*, 475 U.S. at 321).

In this case, there is no genuine dispute as to whether Wills had a reasonable basis for using at least *some* amount of force against Bryant. Shortly after Bryant had been ordered to his cell after getting into argument with a corrections officer, Wills heard McCoig yelling at Bryant to "stop resisting" and to put his hands behind his back. Conspicuously, Bryant has never claimed that he was *not* resisting. But at the very least, Wills reasonably believed that Bryant was behaving in a noncompliant manner when he ran to Bryant's cell to assist, where he came upon a physical altercation between McCoig and Bryant. At this point, Wills plausibly believed that the use of force was necessary to help restrain Bryant, and he quickly acted on this belief.

In hindsight, it appears that Wills may have misread the scene. But, at the time, he made the decision to use force in haste and under pressure, based upon a perceived threat to another

corrections officer. Even viewing the facts in Bryant's favor, no reasonable jury could find that Wills's use of force in this instance evinced a malicious or sadistic intent to cause harm.

Bryant's excessive-force claim fails on the objective component as well. The facts indicate that, at most, Wills kneed or elbowed Bryant in the back two or three times. Absent a malicious intent to cause harm, this use of force can only be construed as *de minimis*. Because no reasonable jury could find that Wills violated Bryant's Eighth Amendment right to be free from excessive force, Wills is entitled to qualified immunity under this theory. However, he may still be liable for failing to intervene in the assault, as discussed below.

**2.  *Failure-to-Protect Claim against Deputies Wills, Bullman, and Stocks***

In their motion for summary judgment, Defendants say that Deputies Bullman and Stocks are entitled to qualified immunity because no facts suggest that either deputy ever touched Bryant. At least with respect to Bullman, this assertion is clearly false; Bullman admits that he helped carry Bryant out of his cell [D. 55-3, at 5, 7].  But regardless, "a correctional officer who observes an unlawful beating may, nevertheless, be held liable under § 1983 without actively participating in the unlawful beating." *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990). This is so because "a correctional officer has a duty to protect an inmate from assaults by fellow officers." *Rose v. Sevier Cty., Tenn.*, 2012 WL 6141000, at *4 (E.D. Tenn. Dec. 11, 2012) (Phillips, J.) (citing *McHenry*).  Therefore, based on the allegations contained in Bryant's complaint, the Court construes the complaint as alleging a failure-to-protect claim against Wills, Bullman, and Stocks.

In light of the deputies' assertions of qualified immunity, the Court must again determine whether any defendant violated a constitutional right, and whether the constitutional right was clearly established at the time of the alleged misconduct. Turning to the second prong first, the Court notes that a "clearly-established" right is "one [that] has been decided by the Supreme Court,

the Court of Appeals, or the highest court of the state in which the alleged violation occurred." *Grindstaff v. Mathes*, 2016 WL 6497293, at *5 (E.D. Tenn. Nov. 2, 2016) (*citing Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991)). The clearly established law must be "'particularized' to the facts of the case" so that officials have fair warning of what the law prohibits. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (*citing Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

The Supreme Court has long recognized that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989). Accordingly, the Constitution requires that prison officials "take reasonable measures to guarantee the safety of inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). This includes the duty to protect inmates in their custody from violence at the hands of fellow officers. *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990) *Hunt v. Braden*, 2016 WL 2939542, at *4 n.4 (W.D. Tenn. May 19, 2016); (noting that "a prison guard need not actually take part in an assault to be held liable for failure to protect if he displays deliberate indifference to an excessive risk to an inmate's health or safety"). Thus, the constitutional right to be free from deliberate indifference to officer-on-inmate assault was clearly established at the time of the alleged misconduct in this case.

In order to state a cognizable Eighth Amendment claim based on a failure-to-protect theory, a plaintiff must be able to show that each prison official defendant displayed "deliberate indifference to an excessive risk to an inmate's health or safety." *Nelson v. Overberg*, 999 F.2d 162, 165 (6th Cir. 1993); *Hunt v. Braden*, 2016 WL 2939542, at *4 n.4 (W.D. Tenn. May 19, 2016). The mental state required to establish deliberate indifference is equivalent to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer v. Brennan*, 511 U.S. 825,

834, 839-40 (1994)). This state-of-mind requirement recognizes that, at least constitutionally, "[m]erely being in the presence of an officer who suddenly shoves someone is not the same as standing by idly while a group of officers surrounds and beats someone." *White v. Bell*, 656 F. App'x 745, 749 (6th Cir. 2016). An officer is liable for failing to protect a prisoner from excessive force only when the officer "had both the opportunity and the means to prevent the harm from occurring." *Dixon v. Neubacher*, 2015 WL 1476776, at *19 (N.D. Ohio Mar. 31, 2015) (quoting *Cole v. City of Dearborn*, 448 F. App'x 571, 577 (6th Cir. 2011)); *White*, 656 F. App'x at 749 (noting that "[o]fficers are liable for failing to intervene only when they at least have some chance of stopping the use of excessive force").

In their motion for summary judgment, Defendants focus almost exclusively on the events captured in the video recording, which depicts McCoig slapping Bryant's face two times in the hallway. They say that Wills, Bullman, and Stocks cannot be liable for failing to protect Bryant from McCoig in this instance because the slaps were sudden and unexpected, and thus, unpreventable. The Court agrees. In the video at least, the assault begins and ends in a matter of five seconds. It does not appear that the officers standing by had a chance to stop McCoig's use of force, and they cannot be held liable for their mere presence in the area at the time.

However, the video recording submitted to the Court by both parties only captures two and a half minutes of what took place in the hallway. Bryant *also* alleges that Wills, Bullman, and Stocks failed to intervene when McCoig assaulted him in his *cell*. Although the duration of the assault in the cell is unclear, Bryant says Wills witnessed him being struck "numerous times"; Wills and Bullman held him up while McCoig choked him; and Stocks simply "allowed it to happen" [D. 1, at 6; D. 55-1, at 9]. Defendants completely fail to address these allegations in their motion for summary judgment or their reply. Thus, viewing the facts in the light most favorable

to Bryant, the Court finds that there is a genuine dispute as to whether the deputies had the means or opportunity to intervene when Bryant was allegedly assaulted by McCoig in his cell. Defendants may ultimately prevail on Bryant's failure-to-protect claim, but, in light of the foregoing, that issue is for the jury to determine at trial. At this stage of the proceedings, Wills, Bullman, and Stocks are not entitled to summary judgment on this count.

### C. § 1983 *Monell* Claim against Anderson County

Bryant has also brought a § 1983 claim against Anderson County (Count 3). A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978). However, a local governmental unit may be liable for civil damages in a § 1983 action when the execution of a governmental policy or the toleration of a custom causes the deprivation of a constitutionally protected right. *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996) (*citing Monell*, 436 U.S. at 691). A plaintiff can establish the existence of an illegal policy or custom by reference to "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). Bryant attempts to establish his *Monell* claim against Anderson County using the latter two methods.

Bryant first maintains that Anderson County has a policy of inadequately training and supervising its officials so as to prevent the excessive use of force. In their motion for summary judgment, Defendants present evidence that Wills, Bullman, and Stocks were all properly trained and certified in accordance with Tennessee state law [*see* D. 32, at 12]. The evidence includes an affidavit from Lieutenant Parker, who reviewed the deputies' personnel and training files, and a

copy of Anderson County Jail's policy and procedures handbook [D. 33; D. 33-1]. Defendants' showing shifted the burden to Bryant to identify specific facts in the record that raise a genuine issue for trial as to this claim. Bryant did not do so. Bryant simply cited to Deputy Jeffrey Watson's deposition testimony in which he stated that, in his opinion, McCoig acted in accordance with Anderson County training. This single statement does not create a genuine dispute of a material fact such that a reasonable jury could find in Bryant's favor.

Bryant also alleges that his constitutional rights were violated due to Anderson County's custom of deliberate indifference to the rights of inmates to be free from excessive force. But mere allegations of wrongdoing are not enough. A plaintiff asserting a *Monell* claim must "identify the policy, connect the policy to the [County] itself and show that the particular injury was incurred because of the execution of that policy." *Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (internal citation and quotation marks omitted). In other words, there must be a "direct causal link" between the custom or policy and the alleged constitutional violation such that the County's conduct can be deemed the "moving force" behind the violation. *Id.* There is simply nothing in the record that would permit a reasonable juror to conclude that Anderson County has a custom of indifference that directly led to Bryant's assault. For the foregoing reasons, Anderson County is entitled to summary judgment on Bryant's *Monell* claim.

### D. State-Law Claims

Bryant has also brought state-law claims for assault and battery (Counts 2 and 5) and intentional infliction of emotional distress (Count 7). The Court will address each claim in turn.

#### 1. *Assault and Battery*

In Tennessee, an assault is defined as "any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present

ability, of using actual violence against that person." *Thompson v. Williamson Cty., Tenn.*, 965 F. Supp. 1026, 1037 (M.D. Tenn. 1997); *Huffman v. State*, 292 S.W. 2d 738, 742 (1956). A battery is defined as "any intentional, unlawful and harmful (or offensive) contact by one person with the person of another." *Raines v. Shone's, Inc.*, 909 F. Supp. 1070, 1083 (E.D. Tenn. 1995). Under Tennessee law, "there cannot be an assault and battery without a willful injury of the person upon whom the wrong is inflicted." *Thompson*, 965 F. Supp. at 1038.

Bryant has not alleged that either Bullman or Stocks caused him any willful injury. Stocks never even touched Bryant, and the extent of Bullman's physical contact with him involved carrying Bryant out of his cell after he claimed that he was unable to walk. Bryant may not have *wanted* to be carried out of his cell, but "not every physical contact that is unconsented to is so offensive that it amounts to a battery." *Runions v. Tennessee State Univ.*, 2009 WL 1939816, at *4 (Tenn. Ct. App. July 6, 2009). There is simply no genuine issue of material fact as to whether either Stocks or Bullman may be liable for assault or battery, and, as such, both are entitled to summary judgment.

Wills is also entitled to summary judgment because the Court has already concluded that no reasonable jury could find that Wills used excessive force against Bryant under the circumstances. "Where a plaintiff asserts a battery claim under Tennessee law that arises out of the same use of force as [his] § 1983 excessive-force claim, the analysis is the same for both causes of action." *Griffin v. Hardrick*, 604 F.3d 949, 956 (6th Cir. 2010). Therefore, Bryant's assault and battery claim against Wills must also be dismissed.

Bryant also attempts to hold Anderson County liable for the assault and battery under a theory of respondeat superior. Bryant cites to Tennessee Code § 8-8-302, which creates a state law action against a county for "any wrong ... resulting from any act or failure to act on the part of any

deputy."[9] If this were the only applicable statute, Bryant's claim could clearly proceed. But there is still the Tennessee Governmental Tort Liability Act ("TGTLA") to contend with. In their motion for summary judgment, Defendants say that Anderson County cannot be sued for these intentional torts because under the TGTLA, the County's immunity is removed only for negligent acts or omissions. *See* Tenn. Code Ann. § 29-20-205.

As Bryant points out in his response, the TGTLA actually does not prohibit him from bringing these claims against the County. But the circumstances in which he may do so are limited. "Tennessee courts have held the TGTLA allows a plaintiff to hold a municipal entity vicariously liable for intentional torts not enumerated in Tenn. Code Ann. § 29-20-205(2)—such as assault and battery—only when the plaintiff shows negligence on the entity's part in allowing the intentional tort to occur." *Harrison v. City of Dickson, Tenn.*, 2013 WL 1482950, at *15 (M.D. Tenn. Apr. 11, 2013) (citing *Hughes v. Metro. Gov't of Nashville & Davidson Cty.*, 340 S.W.3d 352, 368-69 (Tenn. 2011)); *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 854 (E.D. Tenn. 2011) (citation omitted) ("In order for the County to be liable for assault or battery, 'it must be established that the County should have reasonably foreseen or anticipated that the plaintiff would be at risk of the injuries complained about.'").

Nevertheless, Anderson County *is* immune from suit as to these claims—just not for the reasons Defendants think. "[I]f an otherwise valid claim under the TGTLA 'arises out of the same circumstances giving rise to his civil rights claim under § 1983,' then the state claim would fall under the civil rights exception and the county would be immune." *Harrison v. City of Dickson,*

[9] Because this statute permits a lawsuit against a county on the basis of vicarious liability, it is inconsistent with § 1983 and cannot be used to maintain a federal cause of action. *See Siler v. Webber*, 443 F. App'x 50, 53 (6th Cir. 2011) (holding that "Tenn. Code Ann. § 8–8–302 ... conflicts with § 1983 and may not be used to maintain a federal action in this instance"). But it can still be used to maintain a *state* cause of action, provided the federal court accepts supplemental jurisdiction over the claim. This Court has done so.

*Tenn.*, 2013 WL 1482950, at *15 (M.D. Tenn. Apr. 11, 2013) (quoting *Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2010)) (cleaned up). Bryant's assault and battery claim (which remains viable against McCoig) clearly arises out of the same circumstances giving rise to his § 1983 claims. As such, this state-law claim falls under the civil-rights exception to the TGTLA, and the County retains its immunity. For the foregoing reasons, Bryant's assault and battery claim is dismissed against Anderson County, as well as against Wills, Bullman, and Stocks.

### 2. *Intentional Infliction of Emotional Distress*

Finally, Bryant alleges a claim for intentional infliction of emotional distress (Count 7) against Anderson County. But Anderson County cannot be sued for this type of claim. *See* Tenn. Code Ann. § 29-20-205(2). To the extent that this claim has been pled against the individual officers, Defendants say that the claim still fails because Bryant cannot establish the elements against the moving defendants. The Court agrees.

To succeed on an IIED claim, the plaintiff must show by competent evidence that the defendant's conduct was "(1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012). In determining whether conduct is "outrageous," Tennessee courts have adopted the high standard set forth in the Restatement (Second) of Torts:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

*Bain v. Wells*, 936 S.W.2d 618, 623 (Tenn. 1997) (*citing* RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)). *See also MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 732 (6th Cir. 2007) ("Tennessee's outrageous conduct standard … is a formidable one.").

The conduct of Wills, Bullman, and Stocks simply does not meet this standard. Even if it did, Bryant has not produced any evidence that the deputies' inaction during McCoig's alleged assault caused him mental injury, much less serious mental injury. In his deposition, Bryant says that *McCoig* "mentally f***ed [him] up," but he makes no such claims against the other individual defendants [D. 55-1, at 8]. Additionally, he presents no evidence of ongoing anxiety, nightmares, sleeplessness, humiliation, or any of the other factors that may support a plaintiff's claim that he has suffered a serious mental injury. *See Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 209-10 (Tenn. 2012) (discussing factors). For the foregoing reasons, Bryant's IIED claim is dismissed against all moving defendants.

## IV. CONCLUSION

Based on the foregoing, Defendants' joint motion for summary judgment [D. 31] is **GRANTED in part** and **DENIED in part**, as follows:

- Bryant's § 1983 claim against Wills, Bullman, and Stocks is **DISMISSED with prejudice** *to the extent* that it states a claim for the use of excessive force (Count 1);

- Bryant's *Monell* claim against Anderson County is **DISMISSED with prejudice**;

- The state-law claims for assault and battery (Counts 2 and 5) and intentional infliction of emotional distress (Count 7) are **DISMISSED with prejudice** against Wills, Bullman, Stocks, and Anderson County; and

- Counts 4 and 6 are **DISMISSED with prejudice** because they were brought solely against the Anderson County Sheriff's Department, which is no longer a defendant in this action.

Because all claims against Anderson County, Tennessee, have been dismissed, Anderson County is hereby **DISMISSED** as a defendant in this case. Bryant may proceed to trial on his § 1983 claim against Wills, Bullman, and Stocks under a failure-to-protect theory.

At this time, the Court is not dismissing any claims against Dustin McCoig because he has not joined the other defendants in moving for summary judgment or otherwise appeared in this case. Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Bryant has failed to request that the Clerk enter default or move for a default judgment pursuant to Rule 55. Accordingly, Bryant is **ORDERED** to file—**within 14 days** of entry of this Memorandum Opinion and Order—a response showing good cause as to why his claims against McCoig should not be dismissed pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute. Bryant is hereby **ON NOTICE** that if he does not timely file a response showing good cause, his claims against McCoig will be dismissed with prejudice pursuant to Rule 41(b).

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**